**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| SPRING SURGICAL CENTER, LLC | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. _____ |
| | § | |
| BLUE CROSS AND BLUE SHEILD OF | § | |
| TEXAS, INC., A DIVISION OF HEALTH | § | |
| CARE SERVICE CORPORATION. | § | |
| | § | |
| Defendant. | § | |

**ORIGINAL COMPLAINT**

Plaintiff Spring Surgical Center, LLC ("Spring Surgical"), files this Original Complaint complaining of and about Defendant Blue Cross Blue Shield of Texas, Inc., a Division of Health Care Service Corporation ("defendant"), and for causes of action would respectfully show the following:

**PARTIES**

1. Plaintiff Spring Surgical, L.L.C. is a limited liability company in good standing that was created pursuant to the laws of the State of Texas on or about August 22, 2007.

2. Defendant Blue Cross Blue Shield of Texas, Inc., a Division of Health Care Services Corporation, is a corporation with its principal place of business in Texas. Defendant may be served with process by serving its registered agent for service: **Corporation Service Company, 211 E. 7th St., Suite 620 Austin, TX 78701-3218.**

**JURISDICTION AND VENUE**

3. This Court has personal jurisdiction over defendant because defendant conducts substantial business in Texas, and because a substantial part of the events or omissions giving rise to the counterclaims occurred here.

4. The Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §§ 1001 et seq., Employment Retirement Income Security Act ("ERISA"), as Spring Surgical's claims, in

part, arise under ERISA. The Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, law or treaties of the United States.

5.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.     This Court has supplemental jurisdiction over Spring Surgical's non-ERISA claims pursuant to 28 U.S.C. § 1367, as those claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.     Venue is appropriate in this Court under 29 U.S.C. § 1132(e)(2), which states that "[w]here an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."

8.     Venue is properly established in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

## STATEMENT OF FACTS

9.     Healthcare providers, like Spring Surgical, are classified as either "in-network" or "out-of-network" medical providers. In-network medical providers have contractually agreed with health insurance companies to accept pre-determined and heavily discounted rates for healthcare services furnished to insured members and beneficiaries.

10.     Conversely, out-of-network medical providers have not contractually agreed to accept pre-determined and heavily discounted rates for healthcare services, and instead are generally paid "usual and customary" rates for the same or similar medical service in their geographical area.

11.     Pertinent to the healthcare claims forming the basis for this action, Spring Surgical operated as an out-of-network medical provider who furnished healthcare services to members and beneficiaries covered under healthcare plans insured or administered by defendant.

12.     The healthcare plans at issue permitted members and beneficiaries to obtain healthcare services from out-of-network providers. The members and beneficiaries paid additional premiums in exchange for this right.

13.     Defendant was required, under the terms and conditions of the various healthcare plans, ERISA, and Texas state law, to pay benefits promptly and correctly for such out-of-network healthcare services.

14.     Covered members and beneficiaries who sought and obtained medical care from Spring Surgical signed an assignment of benefits and designation of authorized representative agreement.

15.     By executing the assignment of benefits, the covered members and beneficiaries assigned to Spring Surgical a broad array of rights related to their healthcare plan benefits, and also appointed Spring Surgical as their authorized representatives. These rights included the right to be paid directly by defendant for Spring Surgical's services provided to the covered members; the right to obtain healthcare plan documents upon request; the right to take all action necessary to seek payments for services based on the covered member's healthcare plan benefits; and the right to pursue any and all legal claims the covered member may have, including ERISA claims. Spring Surgical did not waive a deductible or co-payment in exchange for the execution of the assignment of benefits.

16.     The assignments of benefits signed by the covered members and beneficiaries conferred standing to Spring Surgical not only as an assignee, but also as a designated authorized representative under ERISA. Accordingly, Spring Surgical has standing to pursue claims as both an assignee and as a designated authorized representative.

17.     This lawsuit does not concern any claims associated with healthcare services furnished to individuals covered by the Federal Employees Health Benefits Act ("FEHBA").

18.     In situations where defendant does not directly insure the healthcare plans, it functioned as the healthcare plan's third-party "plan administrator," as that term is defined under ERISA. Accordingly, defendant assumed all obligations imposed by ERISA on plan administrators.

19.     Defendant also acted as a fiduciary because it exercised authority and/or control respecting the management of the disposition of assets of the plans that defendant administers, and/or had authority or responsibility in the administration of the plans that it administers. The exercise of discretion in such determination of plan benefits is an inherently fiduciary function.

20.     Therefore, defendant owes the covered members, beneficiaries, and Spring Surgical the obligation to act prudently, with the care, skill, prudence, and diligence that a prudent administrator would use in the conduct of an enterprise of like character.

21.     Defendant is also a co-fiduciary with its Plan Sponsors pursuant to 29 U.S.C. § 1105 and is liable thereunder for breach of fiduciary duties. ERISA §§ 404(a)(1)(B) and (D), 29 U.S.C. §§ 1104(a)(1)(B) and (D), require defendant to ensure that it is acting in accordance with the documents and instruments governing the plans. Defendant also owes the covered members and beneficiaries the duty of loyalty and to make decisions in the interests of the covered members and beneficiaries, and to avoid self-dealing or financial arrangements that benefit the fiduciary at the expense of covered members or beneficiaries. ERISA § 406, 29 U.S.C. 1106.

22.     Defendant also functions as a fiduciary for self-funded health plans and has fiduciary duties under ERISA. At times, defendant exercises discretionary control in its interactions with self-funded health plans and their subscribers pursuant to rights granted by the self-funded healthcare plan's sponsor.

23.     Defendant also entered into Administrative Service Only ("ASO") agreements, pursuant to which defendant administers the healthcare plan sponsors' self-funded healthcare plans.

24.     Under some ASO agreements, healthcare plan sponsors delegated responsibilities and authority over self-funded healthcare plans to defendant. These responsibilities include determining eligibility and enrollment for coverage under the healthcare plan according to the information provided by the employer, making factual determinations to interpret the provisions of healthcare plans to make coverage determinations on claims for healthcare plan benefits, conducting a full and fair review of each claim which has been denied, and conducting both mandatory levels of appeal determinations for all concurrent, pre-service and post-service claims and notifying the covered member, or the covered member's authorized representatives of its decision. Most of these obligations are required of healthcare plan administrators by the applicable provisions of ERISA.

25.     The foregoing contractual provisions, as well as Spring Surgical's dealings with defendant as described herein, demonstrate that defendant exercises discretionary authority and/or discretionary control over the self-funded healthcare plans and/or assets that defendant administers, as well as the assets of those self-funded healthcare plans, both of which the healthcare plan sponsors, with whom defendant contracts, have unequivocally yielded to defendant.

26.     Despite the differences in the categories of the insurance policies above, all of the claims at issue in this case were administered by defendant and were not paid or reimbursed at the usual and customary rates for the same or similar medical services in and around Harris County and surrounding counties.

27.     Before scheduling or performing any medical services, Spring Surgical called defendant at the telephone number indicated on each covered member or beneficiary's healthcare card to verify the member or beneficiary's coverage and eligibility, including out-of-network benefit coverage and coverage for the specific healthcare services to be performed.

28.     Spring Surgical also verified that reimbursement for the medical services would be made at the usual and customary rate for the same or similar medical services in and around Spring Surgical's geographical area.

29.     Throughout the administrative process for the healthcare claims forming the basis for this action, defendant never referenced or invoked a healthcare plan's anti-assignment clause, never refused to communicate with Spring Surgical based on any such anti-assignment provisions, never refused to process any of Spring Surgical's claims based on any such anti-assignment provisions, and never invoked any such anti-assignment provisions as a basis for refusing to pay the proper amount due and owing for the healthcare claims.

30.     On the contrary, defendant engaged in regular interaction with Spring Surgical regarding the healthcare claims forming the basis for this action without mentioning or invoking any matter regarding the covered member's assignment of benefits. When Spring Surgical verified member eligibility and to obtained pre-authorization for out-of-network services, defendant never took the position that the covered members were prohibited from assigning claims to Spring Surgical, or that Spring Surgical lacked legal standing to pursue and recover reimbursement for the healthcare claims.

31.     Upon receipt of defendant's authorizations, and in reasonable reliance on them, Spring Surgical performed medical services for covered members and beneficiaries.

32.     After medical services were performed, Spring Surgical properly and timely submitted claims together with all necessary supporting documents and information through defendant's designated claims handling channels.

33.     Defendant, upon receiving these claims, either denied them, underpaid them, or otherwise failed to pay them in accordance with the terms and conditions of the covered member and/or beneficiary's healthcare plans. Additionally, defendant failed to pay these claims promptly. Defendant's failure to pay what it was obligated to pay for procedures performed at Spring Surgical resulted in direct financial benefit to defendant, and caused damages to Spring Surgical.

34.     Defendant failed to provide adequate notice concerning denials and other payments of claims as required by 29 U.S.C. § 1133(1) and by failing to provide a reasonable opportunity for "full and fair review" concerning denial of claims as required by 29 U.S.C. § 1133(2).

35.     29 C.F.R. § 2560.503-1(g)(1) required that defendant state the specific reason(s) for any adverse determination, as well as identify the specific healthcare plan provision(s) on which the adverse determination was based. At no time during did defendant state that the reason for any adverse benefit determination was an anti-assignment provision, nor did it reference a specific anti-assignment provision in any healthcare plan.

36.     When defendant failed to make appropriate and timely payments, Spring Surgical verbally, and via written correspondence, requested explanations for the denials or underpayments and requested healthcare plan documents supporting any such adverse benefits determinations. Spring Surgical clearly communicated that it was the legal assignee and designated authorized representatives of the covered member or beneficiary.

37.     Defendant, however, refused to provide these documents.

38.     Spring Surgical appealed the underpayments, non-payments, and/or denials to the defendant or defendant's agents, per the defendant's instructions. Administrative and appeal options were pursued until exhausted or deemed exhausted due to futility. Spring Surgical enclosed a copy of the aforementioned assignment of benefits and designation of authorized representative agreement with its written appeals.

39.     The causes of action made subject of this lawsuit are the result of defendant's non-payment or under-payment of healthcare claims associated with medical services furnished to covered members and beneficiaries at Spring Surgical's surgical facility.

40.     All conditions precedent to bringing this action have occurred, or have been waived.

### ERISA-BASED CAUSES OF ACTION

### Count 1:  Claim to Enforce and Obtain Benefits Under ERISA

41.     Spring Surgical incorporates the allegations contained in the preceding paragraphs as if set forth verbatim herein.

42.     Pursuant to under 29 U.S.C. § 1132(a)(1)(B), Spring Surgical is entitled to enforce the terms of the healthcare plans, as assignee of the members and beneficiaries for whom defendant has made claim determinations without valid data, has made claim determinations in an arbitrary fashion, and otherwise to obtain appropriate relief under such provision. Under § 502(a) of ERISA, Spring Surgical, as beneficiary and assignee, is entitled to recover benefits under the terms of the healthcare plans for covered members and/or beneficiaries from whom Spring Surgical received an assignment of benefits.

43.     Spring Surgical is entitled to recover benefits for providing medical services to patients from whom Spring Surgical in two different capacities: (1) as assignees of the members' benefits and (2) alternatively, as authorized representatives of the members or beneficiaries themselves.

44.     The healthcare plans allow for, at a minimum, reimbursement of the covered member or beneficiary's reasonable and necessary medical expenses at usual and customary rates. Spring Surgical billed and sought reimbursement at usual and customary rates for its geographical area for medical services rendered.

45.     Defendant acted as a fiduciary to its beneficiaries, including Spring Surgical as assignee, because defendant exercised discretion in determining whether plan benefits would be paid and/or

the amounts of plan benefits that would be paid. As a fiduciary under ERISA, defendant is subject to a civil action under § 502(a) of ERISA.

46.     In further violation of ERISA, defendant failed to provide Spring Surgical, as assignee, with all rights under the terms of the underlying healthcare plan. Defendant failed to make clear to Spring Surgical, as assignee, its rights to future benefits under the terms of the underlying healthcare plans, as required by ERISA.

47.     Defendant also breached the terms of the healthcare plans by making claims determinations that had the effect of reimbursing less than the amount indicated by the covered members' healthcare plan for out-of-network medical services without valid evidence or information to substantiate such determinations, and/or did so in an arbitrary fashion.

48.     As a proximate result of defendant's wrongful acts, Spring Surgical has been damaged in the amount in excess of the jurisdictional limits of this Court.

**Count 2: Defendant's Breach of Fiduciary Duties Under ERISA**

49.     Spring Surgical incorporates the allegations contained in the preceding paragraphs as if set forth verbatim herein.

50.     Spring Surgical, as the assignee of the covered members and as the covered members' authorized representative, is entitled to assert a claim for relief under defendant's breach of the fiduciary duties of loyalty and care under 29 U.S.C. § 1132(a)(3).

51.     Defendant acted as "fiduciary" to Spring Surgical as an assignee in connection with the covered members and beneficiary's group health plans, as such term is understood under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). In its capacity as the insurer, plan administrator, claims administrator, and/or fiduciary of ERISA group plans, defendant is a fiduciary.

52.     As a fiduciary of group healthcare plans under ERISA, defendant owes beneficiaries a duty of loyalty, defined as an obligation to make decisions in the interest of beneficiaries, and to avoid

self-dealing or financial arrangements that benefit the fiduciary at the expense of beneficiaries. Defendant cannot, for example, make benefit determinations for the purpose of maximizing profit to defendant at the expense of beneficiaries.

53.     Defendant acted as a fiduciary to its beneficiaries, including Spring Surgical, because defendant exercised discretion in determining whether plan benefits would be paid, and/or the amounts of plan benefits that would be paid, to those plan beneficiaries. The exercise of discretion in such determinations of plan benefits is an inherently fiduciary function that must be carried out in accordance with the terms of plan, not in a manner to maximize profit to defendant by paying lesser amounts to Spring Surgical.

54.     By engaging in the conduct described herein, defendant failed to act with the care, skill, prudence and diligence that a prudent plan administrator would use in the conduct of an enterprise of like character or to act in accordance with the documents and instruments governing the plan. Fiduciaries must ensure that they are acting in accordance with the documents and instruments governing the plan. ERISA §§ 404(a)(1)(B) and (D), 29 U.S.C. §§ 1104(a)(1)(B) and (D). 29 U.S.C. §§ 1104(a)(l)(B), (D) provide the relevant standard of care for fiduciaries under ERISA:

> Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a defendant solely in the interest of the participants and beneficiaries and (B) with the care skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and (D) in accordance with the documents and instruments governing defendant insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter Ill of this chapter.

55.     Defendant violated its fiduciary duty of care by, among other things, determining whether plan benefits would be paid, and/or determining the amounts of plan benefits that would be paid, to those plan beneficiaries based on maximizing profit to defendant, rather than based on the

terms of plans and applicable statutes and regulations. Defendant's determinations of the benefits to be paid were made to the benefit of defendant and to the detriment of Spring Surgical.

56.    The conduct demonstrated throughout this Complaint establishes defendant's failure to exercise reasonable care towards covered members and beneficiaries, and Spring Surgical as assignee and as authorized. This conduct resulted in an underpayment to Spring Surgical and impaired Spring Surgical's continued operation and treatment of its patients. Spring Surgical is entitled to relief for defendant's violation of its fiduciary duties under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), including restitution, injunctive and declaratory relief, and its removal as a breaching fiduciary.

57.    Defendant also violated its fiduciary duty of care by underpaying claims without valid data or evidence to substantiate the amount paid, and/or doing so in an arbitrary fashion, by omitting material information about its determinations from Spring Surgical, and/or by applying improper discounts to claims submitted by Spring Surgical, and/or by making misrepresentations about its claims determinations. Additionally, the administration of the claims by defendant subsequent to procedures performed by Spring Surgical conflicts with the representations of defendant and its agents during the verification process.

58.    As a proximate result of defendant's wrongful acts, Spring Surgical has been damaged in the amount in excess of the jurisdictional limits of this Court.

**Count 3: Defendant's Failure to Provide Full & Fair Review Under ERISA**

59.    Spring Surgical incorporates the allegations contained in the preceding paragraphs as if set forth verbatim herein.

60.    Defendant functions as the "plan administrator" within the meaning of such terms under ERISA when it insures a group health plan, or when it is designated as a plan administrator for such plan. As such, Spring Surgical is entitled to assert a claim for relief under 29 U.S.C. § 1132(a)(3).

61.     Although defendant was obligated to provide a "full and fair review" of all claims, it failed to do so in connection with the healthcare claims made subject of this Complaint, and otherwise failed to make necessary disclosures pursuant to 29 U.S.C. § 1133, and its regulations, which mandate that defendant provide a "full and fair review" and make certain disclosures. 29 U.S.C. § 1133 states:

> In accordance with regulations of the Secretary every employee benefit plan shall (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim.

62.     Defendant wholly failed to fulfill these obligations and therefore failed to provide a full and fair review to Spring Surgical. Defendant failed to provide the specific reasons for its denials of benefits, and the denials were not written in a manner calculated to be understood by the covered member, its assignee, or its authorized representative. Specifically, the denial letters from defendant either gave no explanation as to why the claim was denied or underpaid, gave an explanation that was conclusory in nature, or otherwise made no attempt to explain any rational basis for the denials or underpayments.

63.     Further, defendant failed to provide a full and fair review by not providing documents in response to Spring Surgical's requests. Spring Surgical submitted multiple written requests for copies of documents related to the claims and healthcare plans at issue in this case. Pursuant to 29 C.F.R. 2560.503-l(h)(2), defendant was required, among other things, to do the following:

> (i)     Provide claimants the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits;
>
> (ii)    Provide that a claimant be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits;
>
> (iii)   Provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the

claim, without regard to whether such information was submitted or considered in the initial benefit determination.

Defendant failed to fulfill the obligations imposed by 29 C.F.R. 2560.503-l(h)(2), and therefore failed to provide a full and fair review to Spring Surgical. Despite demand for all documents, records, and other information relevant to Spring Surgical's claim for benefits, defendant produced nothing to Spring Surgical. Further, defendant's review, if any, failed to take into account all documents, records, and other information submitted by Spring Surgical. When Spring Surgical appealed these determinations, defendant rarely amended its initial determination that had denied, or substantially underpaid, benefits owed under the underlying healthcare plan. Defendant either provided no explanation for its adverse determinations against Spring Surgical, or provided conclusory explanation that frequently consisted of one to two sentences indicating that defendant was maintaining the prior decision.

64.     Spring Surgical was proximately harmed by defendant's failure to comply with 29 U.S.C. § 1133, and has been damaged in the amount that exceeds this Court's minimum jurisdictional requirements.

## Count 4: Penalties for Defendant's Failure to Provide Information

65.     Spring Surgical incorporates the allegations contained in the preceding paragraphs as if set forth verbatim herein.

66.     29 U.S.C. § 1132(c) provides penalties for an administrator's refusal to supply required information. 29 U.S.C. § 1132(c)(l)(B) provides:

Any administrator who fails or refuses to comply with a request for any information which such administrator is requited by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this

paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

67.     29 U.S.C. § 1024(b)(4) states, in part, "The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, or other instruments under which the plan is established or operated."

68.     Spring Surgical made written requests for information to defendant; however, defendant failed to comply with these requests.

69.     29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1(h)(5) provides a civil penalty in the amount of $100 per day for such failure and refusal to provide the requested documents. As such, Spring Surgical is not only entitled to the requested documents through an appropriate order of this Court but it is also entitled to the $100 per day civil penalty for each claim at issue in this case.

**Count 5:  Defendant's Violations of Claims Procedures Under ERISA**

70.     Spring Surgical incorporates the allegations contained in the preceding paragraphs as if set forth verbatim herein.

71.     Defendant is an insurance company that is subject to regulation under the insurance laws of more than one state, including the State of Texas. Further, Defendant processes benefit claims for self-funded healthcare plans providing claims filing and notices of decisions to policyholders in such plans.

72.     Defendant must comply with claims procedures defined by law (e.g., 29 CFR § 2560.503-1) for subscribers and members. Spring Surgical is therefore entitled to seek additional relief if an insurance company failed to comply with federal law. 29 U.S.C. § 1132(a)(3).

73.     Defendant violated these claims procedure regulations by engaging in conduct that rendered its claims procedures and appeals process unfair to subscribers and their assignee.

74.     As a proximate result of its violation of such regulations, Spring Surgical has been harmed in an amount in excess of the jurisdictional limits of this Court.

## STATE LAW CAUSES OF ACTION

### Count 6: Defendant's Breach of Contract

75.     Spring Surgical incorporates the allegations contained in the preceding paragraphs as if set forth verbatim herein.

76.     Spring Surgical has standing to bring this count pursuant to the above-described assignment of benefits that Spring Surgical received from covered members and beneficiaries.

77.     The healthcare plans allow for reimbursement of reasonable and necessary medical expenses at usual and customary rates in and around the treating medical providers' geographical area.

78.     Defendant administered the claims resulting in drastic underpayments, thereby breaching the terms and conditions of the healthcare plans.

79.     As a proximate result of defendant's wrongful acts, Spring Surgical has been damaged in the amount in excess of the jurisdictional limits of this Court.

### Count 7: Promissory Estoppel

80.     Spring Surgical incorporates the allegations contained in the preceding paragraphs as if set forth verbatim herein.

81.     Spring Surgical brings a claim for promissory estoppel in its own right as an out-of-network provider. Covered members and beneficiaries received healthcare services at Spring Surgical. Before scheduling any procedure for covered members, Spring Surgical contacted defendant, or the contracted agent that is listed on each member's insurance card, to confirm whether coverage was available for the scheduled services and to obtain the specific coverage details for that covered member's healthcare plan. Moreover, Spring Surgical also verified that reimbursement for the medical

services would be made at the usual and customary rate for the same or similar medical service in and around Harris County and surrounding counties.

82.     During the verification phone conferences between Spring Surgical and defendant, defendant represented to Spring Surgical that the patients and services were covered by health insurance policies that contained out-of-network benefits.

83.     During the verification phone conferences between Spring Surgical and defendant, defendant represented to Spring Surgical that the patients and services were covered by health insurance policies that contained out-of-network benefits. In each instance, defendant confirmed eligibility, coverage and benefits for the scheduled procedure. Neither defendant nor its agents ever disclosed coverage limitations or restrictions. By confirming coverage, defendant made a clear and definite promise to pay Spring Surgical for each of the services provided.

84.     These unambiguous promises to pay Spring Surgical constitute an obligation defendant owes to Spring Surgical independent of the obligations defendant owe the members of the health care plans issued or administered by defendant.

85.     Spring Surgical did not have access to the various member's healthcare plans, and therefore, had to rely upon the information provided by defendant and its agents in order to determine whether Spring Surgical would be reimbursed for services performed. Thus, Spring Surgical reasonably and substantially relied on the verifications from defendant to its detriment by performing medical services to covered members and beneficiaries.

86.     Spring Surgical's reliance on these representations was foreseeable to defendant. Through the communications between Spring Surgical and defendant, defendant knew that Spring Surgical was attempting to determine coverage information prior to rendering services. The purpose of Spring Surgical's verification confirmation calls was to obtain defendant's assurance that the medical services to be provided were covered under the applicable healthcare plan. Defendant, who is in the

business of administering health insurance policies, understood this fact and knew, or should have known, that Spring Surgical would rely on defendant's verification of coverages and assurance of payments by performing medical services.

87.     Spring Surgical's reliance upon defendant's coverage and benefit payment promises was detrimental to Spring Surgical's business operations and cash flow because Spring Surgical did not require covered members to make alternate payment arrangements before the procedures were scheduled and services were provided.

88.     After providing services to covered members and beneficiaries, and pursuant to defendant's representations, Spring Surgical submitted claims to defendant for payment of benefits.

89.     Despite its obligation to pay each claim, defendant has failed, and continues to fail, to pay Spring Surgical consistent with its agents and its unambiguous promises to pay for the services it provided to the covered members and beneficiaries.

90.     Defendant is required to pay benefits in amounts consistent with the statements made while confirming coverage with Spring Surgical. Injustice can only be avoided by enforcing the defendant's promise.

91.     As a proximate result of its reliance on defendant's unambiguous promises, Spring Surgical has been harmed in an amount in excess of the jurisdictional limits of this Court.

**Count 8:  Quantum Meruit**

92.     Spring Surgical incorporates the allegations contained in the preceding paragraphs as if set forth verbatim herein.

93.     Spring Surgical bring this claim in their own right rather than as assignees of the covered members' rights, or as the authorized representative of the covered member or beneficiary.

94.     This claim does not depend on or require interpretation of the healthcare plans because it arises from the defendant's pre-authorization of and implied promises to pay for healthcare

services rendered by Spring Surgical to covered members and beneficiaries and, therefore, alleges violations of independent legal duties owed directly to Spring Surgical by the defendant.

95.     Before providing services to a covered member or beneficiary, Spring Surgical informed the defendant that the member or beneficiary was scheduled for certain medically necessary healthcare services. Spring Surgical requested authorization from the defendant to provide the healthcare services at issue. Defendant and/or the defendant's agents provided Spring Surgical with authorization to provide the services to the covered member or beneficiary.

96.     Defendant, either directly or through its agents, agreed to pay Spring Surgical directly for the services they provided to the covered members and beneficiaries. Furthermore, when Spring Surgical called the defendant and/or the defendant's agents to verify their patients' coverage, they also asked whether they would pay Spring Surgical's reasonable and customary fees for their services. Defendant and/or the defendant's agents confirmed they would do so.

97.     Spring Surgical and the defendant understood, based on the representations of the defendant or its agents and the above-described pre-authorizations, that by providing medical necessary healthcare services, Spring Surgical would be paid the fair market value of its services. In reasonable reliance on such representations, Spring Surgical furnished valuable medical services and materials to the covered members and beneficiaries.

98.     Defendant's authorizations, together with the overall course of conduct between the parties, created an implied agreement whereby defendant promised to pay for medical services furnished to covered members or beneficiaries.

99.     Defendant accepted, used, enjoyed, and benefited from Spring Surgical's provision of valuable healthcare services.

100.     Defendant knew that Spring Surgical were providing the services for the benefit of defendant.

101.    Defendant had reasonable notice that Spring Surgical expected compensation for the above-described services and materials.

102.    Defendant has failed and refused, and continues to refuse, to timely and properly pay Spring Surgical for the reasonable value of their services provided to covered members and beneficiaries. Instead, the defendant has delayed payment, denied payment, and/or paid whatever amount it arbitrarily decided was appropriate for such services at rates far below the services' reasonable value. As a result, defendant, which accepted the benefit of the medical services furnished to covered members and beneficiaries as well as the insurance premiums from covered members and beneficiaries in exchange for out-of-network healthcare coverage, has been unjustly enriched in the amount of the reasonable value of the services rendered by Spring Surgical.

103.    The reasonable value of the services provided by Spring Surgical to Defendant members and beneficiaries is Spring Surgical's billed charges for the services.

104.    Spring Surgical have demanded on numerous occasions that the defendant pay for the healthcare services Spring Surgical provided to covered members and beneficiaries, and have objected to the defendant's failure to timely and properly pay for the services provided to the members and beneficiaries.

105.    Accordingly, there is now due, owing, and unpaid from defendant to Spring Surgical an amount to be proven at trial, plus applicable statutory interest.

### Count 9:  Negligent Misrepresentation

106.    Spring Surgical incorporates the allegations contained in the preceding paragraphs as if set forth verbatim herein.

107.    Spring Surgical brings this claim in its own right to recover for defendant's negligent misrepresentations made directly to Spring Surgical.

108.    This claim does not depend on or require interpretation of the healthcare plans as it arises from defendant's negligent misrepresentations of material facts directly to Spring Surgical, and alleges violations of independent legal duties owed directly to Spring Surgical.

109.    Defendant was well-apprised of the facts concerning Spring Surgical's request to provide services to covered members and beneficiaries. When Spring Surgical called defendant or its agents to verify insurance coverage, they asked defendant or its agents if the underlying healthcare plan provided out-of-network benefits for the medical services Spring Surgical intended to perform. Defendant's representatives responded in the affirmative.

110.    During these calls, Spring Surgical further inquired whether defendant would pay Spring Surgical's usual and customary charges. Again, defendant's representative confirmed defendant would pay the usual and customary fees charged by the Spring Surgical for the specified services.

111.    For healthcare services that defendant indicated required pre-authorization, Spring Surgical further sought, and received, such authorization from defendant before providing services to the covered member or beneficiary.

112.    For medical services that did not require pre-authorization Spring Surgical relied on defendant's representation to Spring Surgical during the initial insurance verification telephone call that no express pre-authorization was required for Spring Surgical to be paid for providing the services to the covered member or beneficiary. In providing these responses, defendant intended that its conduct would be acted upon by Spring Surgical and/or knew that, after telling Spring Surgical the services were authorized or that no authorization was necessary, Spring Surgical would provide the discussed services to the covered members and beneficiaries.

113.    It is common practice in the health care industry for defendants to assure out-of-network healthcare providers in advance that they will be reimbursed for services provided to the

covered member and beneficiaries. Thus, it was foreseeable that Spring Surgical would rely upon the above-mentioned misrepresentations.

114.   Defendant or its agents made the above-mentioned representations to Spring Surgical in the course of defendant's business, or in a transaction in which defendant had a pecuniary interest.

115.   Defendant or its agents made the above-mentioned misrepresentations for the guidance of others, including Spring Surgical.

116.   Defendant or its agents did not exercise reasonable care or competence in obtaining or communicating the information.

117.   Defendant or it agents made the above-mentioned misrepresentations without reasonable grounds for believing them to be true or accurate.

118.   Spring Surgical reasonably and actually relied on defendant's statements that the services were authorized, or that no authorization was needed in order to be paid the usual and customary rate for their services.

119.   Spring Surgical likewise reasonably and actually relied on defendant's statements that it would pay Spring Surgical's reasonable and customary charges. In reliance on these representations, Spring Surgical rendered medical services to the patients and did not seek alternative potential sources of payment. Had Spring Surgical known the truth, they never would have rendered the services to defendant's participants and beneficiaries.

120.   As a proximate result of defendants' negligent misrepresentations, Spring Surgical has been harmed in an amount in excess of the jurisdictional limits of this Court.

### Count 10:  Texas Insurance Code Violations

121.   Spring Surgical incorporates the allegations contained in the preceding paragraphs as if set forth verbatim herein.

21

122.     Spring Surgical has standing to pursue this count either pursuant to the above-described assignment of benefits or in its own right as a provider of medical services to covered members and beneficiaries.

123.     The acts and omissions also constitute violations of Texas common law and the Texas Insurance Code. By arbitrarily delaying and failing to timely pay claims, defendant is in violation of the Texas Prompt Pay Statute, Tex. Ins. Code § 542.058, among other sections. Further, defendant's acts and omissions constitute an illegal boycott or an act of coercion in violation of Tex. Ins. Code § 541.003, as an act of unfair competition within the state of Texas. See also, Tex. Ins. Code § 541.054.

124.     Defendant violated Tex. Ins. Code § 1301.056 by purporting to reimburse Spring Surgical on a discounted fee basis despite the fact that Spring Surgical is an out-of-network provider, and did not agree to accept a discounted fee for the above-described healthcare services. Defendant also violated Tex. Ins. Code § 1301.056 by purporting to reimburse Spring Surgical on a discounted fee basis despite the fact that defendant has taken the position that it did not agree to provide coverage for the above-described healthcare services.

125.     As a proximate result of its violations of such regulations and laws, Spring Surgical has been harmed in an amount in excess of the jurisdictional limits of this Court.

## DAMAGES

126.     Spring Surgical incorporates the allegations contained in the preceding paragraphs as if set forth verbatim herein.

127.     Spring Surgical is entitled to compensatory damages in an amount in excess of the jurisdictional limits of this Court.

128.     Further, Spring Surgical is entitled to damages and interest under the Texas Insurance Code in an amount in excess of the jurisdictional limits of this Court.

**ATTORNEYS' FEES**

129.    Spring Surgical incorporates the allegations contained in the preceding paragraphs as if set forth verbatim herein.

130.    Spring Surgical has repeatedly presented claims to defendant demanding payment for the above-described healthcare services. More than 30 days have passed since those demands were made, but the defendant has failed and refused to pay Spring Surgical. As a result of defendant's failure to pay these claims, Spring Surgical has been required to retain legal counsel to institute and prosecute this action. Spring Surgical is therefore entitled to recover reasonable attorneys' fees for necessary services rendered in prosecuting this action, as well as any subsequent appeals.

131.    Spring Surgical is entitled to an award of attorneys' fees on its ERISA claims. *See* 29 U.S.C. § 1132(g)(l) *See Hardt v. Reliance Std. Life Insurance. Co.,* 130 S.Ct. 2149, 2152 (2010); *see also Baptist Mem. Hosp. - Desoto, Inc. v. Crain Auto., Inc.,* 392 Fed. Appx. 289, 299 (5th Cir. 2010).

132.    Spring Surgical is also entitled to an award of attorneys' fees pursuant to Texas state law. Spring Surgical has presented claims to defendant demanding payment for the value of the above-described services. Defendant has failed and refused to pay Spring Surgical more than 30 days after the demands were made pursuant to the Texas Civil Practices and Remedies Code section 38.001. As a result of defendant's failure to pay these claims, Spring Surgical was required to retain legal counsel to institute and prosecute this action.

**JURY DEMAND**

133.    Spring Surgical requests a trial by jury for all claims for which a jury trial is available under applicable law.

**CONCLUSION**

For these reasons, Spring Surgical asks for judgment of and against defendant for damages; attorneys' fees; both pre-judgment and post-judgment interest at the highest rates allowed by law;

taxable costs; the entry of an Order requiring Defendant to produce the requested plan and associated

documents; and such other and further relief to which they may show themselves justly entitled.


Respectfully submitted,

By:   _____/s/_____
      Edwin A. Easterby Attorney-in-Charge
      Southern District of Texas No:  20598
      State Bar No. 00796500
      aeasterby@williamskherkher.com
      Williams Kherkher Hart Boundas, L.L.P.
      8441 Gulf Freeway, Suite 600
      Houston, TX 77017
      Telephone:     713.230.2200
      Facsimile:      713.643.6226


      Bryan O. Blevins, Jr.
      Southern District of Texas No:  347439
      State Bar No. 02487300
      bblevins@provostumphrey.com
      Provost Umphrey Law Firm L.L.P.
      490 Park Street
      Beaumont, TX 77704
      Telephone:     409.299.5178
      Facsimile:      409.813.8610


      **Attorneys for Plaintiff Spring Surgical Center, LLC**